UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
MALCOM PITT,
                Plaintiff,

v.

COUNTY OF ROCKLAND; SERGEANT
OBLENIS; SERGEANT LOWE; CORRECTION
OFFICER KARNEY; CORRECTION OFFICER
G. VANDUNK; CORRECTION OFFICER
FIGUEROA; and CORRECTION OFFICER
SPENCE,
                Defendants.
--------------------------------------------------------------x

**OPINION AND ORDER**

22 CV 8356 (VB)

Briccetti, J.:

    Plaintiff Malcolm Pitt, proceeding pro se and in forma pauperis, brings this Section 1983 action against defendants County of Rockland, Sergeants Oblenis and Lowe, and Correction Officers Karney, G. Van Dunk,[1] Figueroa, and Spence. Plaintiff alleges defendants violated his constitutional rights by failing to protect him from an assault by another inmate and then frustrating his efforts to pursue administrative and judicial remedies concerning the attack.

    Now pending is defendants' motion to dismiss the amended complaint pursuant to Rule 12(b)(6). (Doc. #29).

    For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

    The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

---

[1]     Plaintiff incorrectly sued defendant Correction Officer G. Van Dunk as "Vandunk." (Doc. #16). The Court refers to this defendant by his proper name as set forth in defendants' memorandum of law. (Doc. #31 at 1).

1

**BACKGROUND**

For the purpose of ruling on the motion, the Court accepts as true all well-pleaded factual allegations in the amended complaint and certain factual allegations in plaintiff's opposition.[2] The Court draws all reasonable inferences in plaintiff's favor, as summarized below.

I.     July 2022 Alleged Assault

At all relevant times, plaintiff was incarcerated as a pretrial detainee at Rockland County Correctional Center in Hempstead, New York ("RCCC").[3]  In July 2022, both plaintiff and a fellow inmate named Darius Williams were housed in the B-wing unit of the jail.  On July 20, 2022, Williams was allegedly removed from his cell because he had failed to return the blade to a shaving razor he had "received that night."  (Doc. #16 ("Am. Compl.") at ECF 6).[4]  According to plaintiff, RCCC staff were "unable to retrieve or locate the blade," so they moved Williams to

---

[2]     Because plaintiff is proceeding pro se, the Court considers new allegations in his opposition, to the extent they are consistent with the amended complaint.  See Kelley v. Universal Music Grp., 2016 WL 5720766, at *6 (S.D.N.Y. Sept. 29, 2016); see also Davila v. Lang, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) (Although "[a] pro se plaintiff may not raise entirely new causes of action for the first time in his opposition papers, . . . the Court may consider new claims appearing for the first time in briefing if the claims could have been asserted based on the facts alleged in the complaint.").

Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

Plaintiff will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

[3]     Plaintiff refers to the facility as "Rockland County Jail," (Doc. #16), but the Court will use its correct name as set forth in defendants' memorandum of law.  (Doc. #31).

[4]     "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

2

"[i]ntake housing," performed a strip search, and placed Williams on "24/7 security watch." (Id.).

Plaintiff alleges Oblenis came to his cell the following morning, July 21, 2022, and asked whether plaintiff had had any "problems" with Williams. (Am. Compl. at ECF 6). Plaintiff told Oblenis he was not aware of any issues between the two men, and "[his] main focus was [his] case." (Id.). That night, Van Dunk also allegedly approached plaintiff and told him to "be careful" and "watch [his] back" because Williams still had the razor and would be returning to B-wing imminently. (Id.). According to plaintiff, Williams had keep-away orders issued against him "in the other wings." (Id.). Plaintiff contends he was the only inmate whom Oblenis and Van Dunk warned or spoke with regarding Williams.

Plaintiff alleges Williams was soon returned to B-wing and, around 7:00 a.m. on July 22, Williams approached plaintiff and cut his head and arm using "[t]he same razor staff failed to find." (Am. Compl. at ECF 7). Plaintiff alleges he was treated for his injuries and returned to his cell.

II.   Post-Assault Events

Plaintiff contends that after returning to his cell following the assault, he requested a grievance form from Spence, the officer on duty. (Am. Compl. at ECF 7). Spence allegedly told plaintiff he could not file a grievance because "no blade was found on [Williams]," and plaintiff could not "grieve a fight." (Id.). Plaintiff asserts he then requested a grievance form from Lowe, who also told plaintiff "a fight was not a grievable matter." (Id.).

According to plaintiff, instead of bringing him a grievance form, Lowe came to him that afternoon with a "disciplinary sheet" charging plaintiff with failure to obey a direct order. (Am. Compl. at ECF 7). Plaintiff alleges he signed the disciplinary sheet and accepted a penalty of

3

one week's loss of commissary because Lowe had threatened him, saying, "[y]ou getting of[f] easy[,] I could hit you with 15 days [l]ocked in." (Id.). Plaintiff believes Lowe used the disciplinary infraction to discourage him from "pursuing the matter any further that day." (Id.).

Plaintiff further alleges that in the days after the attack, Figueroa and Karney told him that while Williams was in "[i]ntake housing" on July 21, he had "talk[ed] about hurting [plaintiff]," made it "clear & well known he had it out" for plaintiff, and generally made statements "threatening" plaintiff's well-being. (Am. Compl. at ECF 10). Figueroa allegedly reported this information "to his superior officers." (Id.).

Following the attack, Williams was allegedly moved to "the A-wing Bubble" and placed in administrative segregation because RCCC staff still could not locate the blade he had used to assault plaintiff. (Am. Compl. at ECF 8). Between July 23 and August 6, 2022, Williams's cell was allegedly searched numerous times without success. At that point, Lowe offered several inmates "$50 worth of commis[s]ary if they could find the blade." (Id.). Plaintiff asserts that "a few times" during this period, Williams also "escaped the ISO-Bubble" and attempted to assault an inmate named Joseph Heffer. (Id.). On August 6, Lowe allegedly observed Williams trying to swallow the razor during a surprise search. Plaintiff contends that after a "brief struggle and physical altercation," Lowe convinced Williams to hand over the blade in exchange for a promise that Lowe would not file criminal or disciplinary charges against him. (Id.).

III.    September 2022 Events

On September 5, 2022, plaintiff alleges he was involved in an unrelated "[a]ltercation" and was sent to the hospital. (Am. Compl. at ECF 9). According to plaintiff, when he returned, he was charged with "promoting prison contraband in the first degree," a felony. (Id.). Plaintiff alleges Lowe instigated this charge, reporting that plaintiff had possessed a "metal sharp shank."

4

(Id.).  Plaintiff says fellow inmates told him Lowe had never charged Williams for possession of a blade, and the other inmates were surprised plaintiff had been charged.  Plaintiff contends he filed a grievance accusing Lowe of "selective prosecution & biasness," but it was denied as non-grievable and non-appealable.  (Id.).

## DISCUSSION

I. Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under "the two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

Moreover, the Court must liberally construe submissions of pro se litigants and interpret them "to raise the strongest arguments that they suggest."  Triestman v. Fed. Bureau of Prisons,

470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (collecting cases). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se litigant alleges civil rights violations. Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). Nor may the Court "invent factual allegations" a plaintiff has not pleaded. Id.

II. Failure-to-Protect Claim

Liberally construed, plaintiff's complaint asserts a Fourteenth Amendment failure-to-protect claim against defendants Van Dunk, Karney, Oblenis, Lowe, and Figueroa.

Defendants argue plaintiff has not stated a failure-to-protect claim because (i) he has not alleged facts showing the injuries he sustained in Williams's attack were sufficiently serious, and (ii) he has not demonstrated defendants were deliberately indifferent to the risk Williams posed to plaintiff's health or safety.

The Court agrees as to defendants Lowe and Figueroa, but disagrees as to defendants Van Dunk, Karney, and Oblenis.

A. Legal Standard

"[P]rison officials have a duty to . . . protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). Because plaintiff was a pretrial detainee at all relevant times, the Court analyzes his failure-to-protect claim under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment. See, e.g., Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017); Taylor v. City of New York, 2018 WL 1737626, at *12 (S.D.N.Y. Mar. 27, 2018) (applying Darnell to failure-to-protect claims).

470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (collecting cases). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se litigant alleges civil rights violations. Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). Nor may the Court "invent factual allegations" a plaintiff has not pleaded. Id.

II. Failure-to-Protect Claim

Liberally construed, plaintiff's complaint asserts a Fourteenth Amendment failure-to-protect claim against defendants Van Dunk, Karney, Oblenis, Lowe, and Figueroa.

Defendants argue plaintiff has not stated a failure-to-protect claim because (i) he has not alleged facts showing the injuries he sustained in Williams's attack were sufficiently serious, and (ii) he has not demonstrated defendants were deliberately indifferent to the risk Williams posed to plaintiff's health or safety.

The Court agrees as to defendants Lowe and Figueroa, but disagrees as to defendants Van Dunk, Karney, and Oblenis.

A. Legal Standard

"[P]rison officials have a duty to . . . protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). Because plaintiff was a pretrial detainee at all relevant times, the Court analyzes his failure-to-protect claim under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment. See, e.g., Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017); Taylor v. City of New York, 2018 WL 1737626, at *12 (S.D.N.Y. Mar. 27, 2018) (applying Darnell to failure-to-protect claims).

Failure-to-protect claims have two prongs: an objective prong and a mens rea prong. To plead the objective prong, plaintiff must plausibly allege he suffered a "sufficiently serious" condition of confinement adequate to constitute an "objective deprivation[] of the right to due process." Darnell v. Pineiro, 849 F.3d at 29. This occurs when "the conditions, either alone or in combination, pose an unreasonable risk of serious damage to [the plaintiff's] health." Id. at 30.

The mens rea prong requires a pretrial detainee to allege the defendants "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known" of the risk. Darnell v. Pineiro, 849 F.3d at 35; Darby v. Greenman, 14 F.4th 124, 128 (2d Cir. 2021). Thus, unlike the Eighth Amendment, the Due Process Clause of the Fourteenth Amendment "can be violated when an official does not have subjective awareness that the official's acts (or omissions) could have subjected the pretrial detainee to a substantial risk of harm." Darnell v. Pineiro, 849 F.3d at 35.

B.   Analysis

Assuming the truth of the allegations in the amended complaint, as the Court must at this stage, plaintiff has sufficiently alleged the objective prong of a Fourteenth Amendment failure-to-protect claim. Plaintiff has also sufficiently alleged the mens rea prong with respect to defendants Karney, Van Dunk, and Oblenis but not as to defendants Lowe and Figueroa.

1.   Objective Prong

When an inmate is the victim of an "unprovoked attack," by another inmate, "sufficiently severe injuries may constitute per se showings of a sufficiently serious condition of confinement." Gordon v. Drummond, 2021 WL 5314604, at *7 (S.D.N.Y. Nov. 16, 2021).

Plaintiff asserts that following breakfast on the morning after Williams was returned to B-wing housing, Williams came up to plaintiff with a blade and cut plaintiff's head and arm. And, although plaintiff was later charged with failure to obey a direct order following the attack, the amended complaint does not suggest plaintiff was ever disciplined for inciting Williams's assault or assaulting Williams. Accordingly, drawing all inferences in plaintiff's favor, he was the victim of an unprovoked attack.

Moreover, the injuries alleged (cuts to plaintiff's head and arm), and the manner in which plaintiff received them, are adequate at this stage to satisfy the objective element of his claim. See Knowles v. N.Y.C. Dep't of Corr., 904 F. Supp. 217, 221 (S.D.N.Y. 1995) (plaintiff had "his face suddenly and unexpectedly slashed with a sharp instrument possessed by a fellow inmate"); Warren v. Goord, 579 F. Supp. 2d 488, 491, 494 (S.D.N.Y. 2008) (plaintiff unexpectedly attacked with a razor, "cutting him across his left check").[5]

Defendants argue plaintiff's injuries were "superficial" and, without more, do not rise to a "condition of urgency." (Doc. #31 at 7 (quoting Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994)). This is unavailing. All of the authorities defendants cite in support of this argument involve claims for deliberate indifference to serious medical needs. By their very nature, these claims logically require a plaintiff to allege a "serious medical need." Thus, cases involving deliberate indifference to medical needs often turn on whether the injury alleged was sufficiently severe. In contrast, the objective prong of a failure-to-protect claim "can be satisfied even where no serious physical injury results." Randle v. Alexander, 960 F. Supp. 2d 457, 473 (S.D.N.Y.

---

[5] Although the mens rea prong differs between Eighth Amendment and Fourteenth Amendment claims, the standard on the objective prong remains the same. Accordingly, Eighth Amendment cases are instructive here, even though plaintiff's claim arises under the Fourteenth Amendment. See Darnell v. Pineiro, 849 F.3d at 30.

2013).  As courts in this Circuit frequently note, "[i]n assessing whether the risk of an inmate's violence against other inmates is 'sufficiently serious,' to trigger constitutional protection, the focus of the inquiry must be, not the extent of the physical injuries sustained in an attack, but rather the existence of a 'substantial risk of serious harm.'"  Heisler v. Kralik, 981 F. Supp. 830, 837 (S.D.N.Y. 1997) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Here, plaintiff alleges he was attacked with a razor blade, unexpectedly and without provocation, by an inmate who had expressed an intent to harm him.  As plead, these circumstances constitute an objectively substantial risk of serious harm.

        2.      Mens Rea Prong

First, drawing all inferences in plaintiff's favor, he has sufficiently alleged that defendants Karney, Van Dunk, Oblenis, and Figueroa had actual, subjective knowledge of a particularized threat to plaintiff's safety.

According to plaintiff, after Williams was taken to intake housing and put on security watch, Oblenis asked plaintiff (and only plaintiff) whether he had had any issues with Williams.  Absent facts suggesting otherwise, the most reasonable inference to draw from Oblenis's inquiry is that Oblenis had some reason to believe Williams might try to harm plaintiff.

The same day, Van Dunk also allegedly approached plaintiff and specifically warned him to be careful because Williams would be returning to B-wing housing.  Once again, plaintiff alleges he was the only person to whom Van Dunk spoke, which reasonably suggests Van Dunk thought Williams's return to B-wing posed a threat to plaintiff's safety.  Plaintiff further alleges Karney and Figueroa were working in the intake housing unit on July 20, 2022, when Williams was transferred there and placed on security watch.  Plaintiff asserts that after the assault, Karney

and Figueroa each told him that Williams had threatened his well-being before the July 22 incident.

In sum, plaintiff has plausibly alleged that Oblenis, Van Dunk, Karney, and Figueroa had the requisite knowledge of a serious risk to plaintiff's safety.  See, e.g., Morgan v. Dzurenda, 956 F.3d 84, 90 (2d Cir. 2020) (finding officer-defendants were on notice of an unreasonable risk when they received "detailed and explicit" information regarding the threat a fellow inmate posed to the plaintiff).

In contrast, plaintiff has not plausibly alleged Lowe had any actual knowledge of the threat Williams posed to plaintiff's safety prior to the July 22 incident.  There are also no facts in the amended complaint suggesting Lowe should have been—but was not—aware of the risk before the attack.  Indeed, all of plaintiff's assertions about Lowe concern the aftermath of the alleged assault, including plaintiff's attempts to file grievances and subsequent disciplinary actions taken against him.  Thus, plaintiff may not proceed against Lowe on a failure-to-protect claim.

Second, although RCCC officials did take some measures in response to Williams's behavior, at this early stage, plaintiff has adequately alleged these measures were meaningfully deficient under the circumstances.  According to plaintiff, Williams had failed to return a razor blade after showering and, despite searching for it, officers were not able to locate or secure the blade.  Nonetheless, as alleged by plaintiff, neither Oblenis, nor Van Dunk, nor Karney prevented Williams from returning to a general housing unit after approximately just one day on security watch.  In fact, they did not prevent Williams from being returned to plaintiff's housing unit in B-wing, specifically.  Thus, assuming the truth of plaintiff's allegations, these three defendants created an opportunity for Williams to encounter plaintiff, notwithstanding their

knowledge that Williams apparently meant him harm and, in all likelihood, Williams was still in possession of a dangerous weapon.

On the other hand, plaintiff alleges Figueroa reported Williams's threats to "superior officers." (Am. Compl. at ECF 10). In fact, plaintiff speculates that Figueroa's report may have been the reason Oblenis and Van Dunk approached plaintiff about Williams before the assault. (Id.). Thus, by plaintiff's own account, Figueroa responded reasonably and affirmatively to protect him. Accordingly, plaintiff's failure-to-protect claim against Figueroa must be dismissed.

Here, plaintiff is not alleging generalized dangerous conditions. Cf. Melo v. Combes, 1998 WL 67667, at *5 (S.D.N.Y. Feb. 18, 1998). Rather, he asserts Oblenis, Van Dunk, and Karney were aware of "a specific hazardous condition," which led to plaintiff's injuries. Warren v. Goord, 476 F. Supp. 2d 407, 412 (S.D.N.Y. 2007). In these circumstances, the Court cannot conclude, as a matter of law, that these defendants took "reasonable measures" sufficient to defeat an inference of deliberate indifference. See Ayers v. Coughlin, 780 F.2d 205, 209 (2d Cir. 1985); Pusepa v. Annucci, 2019 WL 690678, at *14 (S.D.N.Y. Feb. 19, 2019).[6]

Accordingly, plaintiff's Fourteenth Amendment failure-to-protect claim against defendants Oblenis, Van Dunk, and Karney may proceed.

III.   Access to the Courts Claim

The Court liberally construes plaintiff's allegations about defendants Lowe and Spence refusing him grievance forms to raise a First Amendment claim for denial of access to the courts.

---

[6]   In arguing RCCC officials took reasonable measures to ensure plaintiff's safety, defendants mention that Lowe offered several inmates $50 in commissary credit if they could locate the missing razor blade. However, the complaint reveals Lowe only took this step after Williams attacked plaintiff. Accordingly, Lowe's efforts do not bear on plaintiff's assertion that defendants failed to protect him from Williams's assault on July 22.

Defendants argue plaintiff has not stated a denial-of-access claim because he has not alleged any facts establishing the requisite injury.

The Court agrees.

To state a constitutional claim for denial of access to the courts, a plaintiff must plausibly allege a defendant, acting deliberately and with malice, "took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim," causing plaintiff to suffer "actual injury." Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003). To establish actual injury, the denial of access must have frustrated or impeded the plaintiff's efforts in pursuing a "nonfrivolous legal claim." Lewis v. Casey, 518 U.S. 343, 352–53 (1996). "Interferences that merely delay an inmate's ability to work on a pending cause of action or to communicate with the courts do not violate this constitutional right." Jermosen v. Coughlin, 1995 WL 144155, at *5 (S.D.N.Y. Mar. 30, 1995).

Plaintiff alleges Lowe and Spence denied his requests for grievance forms to complain about Williams's assaults. In the amended complaint and his opposition, plaintiff argues the denial of grievances prevented him from exhausting administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e).

However, denial of access to or interference with administrative remedies does not give rise to a Section 1983 claim for denial of access to the courts. See, e.g., Rodriguez v. Burnett, 2023 WL 3902705, at *4 (S.D.N.Y. June 7, 2023).

Plaintiff is correct that exhaustion of administrative remedies is a prerequisite to "all inmate suits about prison life." Porter v. Nussle, 534 U.S. 516, 532 (2002). However, plaintiff is only required to exhaust available administrative remedies. See Ross v. Blake, 578 U.S. 632, 643–44 (2016). Therefore, to the extent defendants prevented plaintiff from taking advantage of

the grievance process through "machination, misrepresentation, or intimidation," he would be excused from the exhaustion requirement. Id. at 644; see Stewart v. Ayala, 2022 WL 4356467, at *15 (D. Conn. Sept. 20, 2022) ("[T]he proper judicial remedy for prison officials' alleged interference with Plaintiffs' grievances is to excuse Plaintiff's failure to exhaust his administrative remedies."). In any event, because exhaustion is an affirmative defense and defendants have not yet raised it, the Court leaves this issue for another day.

Insofar as plaintiff asserts a denial of access to courts claim based on Lowe's alleged refusal to provide plaintiff with incident reports concerning Williams's assault, plaintiff has not alleged any actual injury: as plaintiff notes, he requested these reports pursuant to New York's Freedom of Information Law. And, any suggestion that defendants' actions otherwise impeded or frustrated plaintiff's ability to pursue a legal claim arising from the events at issue is belied by the fact of his bringing this lawsuit. See Tutora v. Gessner, 2019 WL 1382812, at *5 (S.D.N.Y. Mar. 27, 2019).

Accordingly, plaintiff's First Amendment denial-of-access claim must be dismissed.

IV.     Equal Protection Claim

Plaintiff asserts Lowe engaged in "selective prosecution" because he charged plaintiff with promoting prison contraband but did not file a similar charge against Williams for possession of the blade used to assault plaintiff. Liberally construed, these allegations suggest an equal protection claim against Lowe based on a selective enforcement theory.

The Constitution's "equal protection clause directs state actors to treat similarly situated people alike." Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995). When, as here, plaintiff is not a member of a constitutionally protected class, he may still bring an equal protection claim

13

based on selective enforcement.  Best Payphones Inc. v. Dobrin, 410 F. Supp. 3d 457, 533 (E.D.N.Y. 2019).

To state a claim for selective enforcement, plaintiff must plausibly allege (i) he was treated differently than a similarly situated individual, and (ii) the "differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Wandering Dago, Inc. v. Destito, 879 F.3d 20, 40 (2d Cir. 2018).  As to the second prong, plaintiff "must demonstrate that the defendant was aware of similarly-situated entities and failed to take comparable action against them."  Bernstein v. Village of Wesley Hills, 95 F. Supp. 3d 547, 571 (2d Cir. 2015).

Moreover, "[t]he disparity in treatment must survive the appropriate level of judicial scrutiny which, in the context of a prison, is that the difference in treatment was not reasonably related to any legitimate penological interests." Reynolds v. Quiros, 990 F.3d 286, 300 (2d Cir. 2021).

Here, plaintiff alleges Lowe persuaded Williams to turn over the razor blade used to assault plaintiff in exchange for a promise that Lowe would not pursue disciplinary or criminal charges against Williams.  Then, several weeks later, plaintiff was charged with promoting prison contraband after he was involved in an unrelated "[a]ltercation."  (Am. Compl. at ECF 9). Even drawing all inferences in plaintiff's favor, these facts suggest Lowe's decision not to pursue charges against Williams was reasonably directed to achieving security and safety in the jail.  That plaintiff was later charged for misconduct in connection with a different incident is not, on its own, adequate to demonstrate plaintiff was treated differently from a similarly situated individual, and for impermissible reasons.

Accordingly, plaintiff has not stated an equal protection claim.

V.      Retaliation Claim

The Court liberally construes the amended complaint to assert a First Amendment retaliation claim against Lowe for charging plaintiff with a disciplinary infraction after plaintiff attempted to file a grievance related to Williams's assault.

To state a First Amendment retaliation claim, "a plaintiff must allege (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Dolan v. Connolly, 794 F.3d 290, 294 (2d Cir. 2015).

Importantly, courts must "approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act."  Dolan v. Connolly, 794 F.3d at 295.  Accordingly, to survive a motion to dismiss, a prisoner asserting a retaliation claim may not rest on "wholly conclusory" allegations but rather must allege "specific and detailed" supporting facts.  Id.

Plaintiff alleges he asked Spence and Lowe for grievance forms so he could complain about Williams's assault, but both defendants refused and told plaintiff a fight was not a grievable matter.  Later the same day, Lowe allegedly approached plaintiff "with a disciplinary sheet" charging him with failure to obey a direct order after the assault.  (Am. Compl. at ECF 7). Plaintiff contends Lowe "used the discipline" to "discourage" plaintiff from "pursuing the matter any further that day."  (Id.).

The filing of an inmate grievance undoubtedly constitutes a constitutionally protected activity.  Dolan v. Connolly, 794 F.3d at 294.  But authority in this Circuit is split as to whether an inmate's expression of an intent to file a grievance is protected by the First Amendment.  See, e.g., McTerrell v. Koenigsmann, 2021 WL 5772484, at *10 (W.D.N.Y. Aug. 18, 2021) (collecting cases); Edwards v. Horn, 2012 WL 760172, at *14 (S.D.N.Y. Mar. 8, 2012).  Ultimately, the Court need not weigh in on this issue because the facts alleged do not sufficiently support a causal connection between plaintiff's conduct and Lowe's alleged retaliatory actions.

As to the third element, "[a] plaintiff may establish causation either directly through a showing of retaliatory animus, or indirectly through a showing that the protected activity was followed closely by the adverse action."  Smith v. County of Suffolk, 776 F.3d 114, 118 (2d Cir. 2015).  To be sure, plaintiff has alleged temporal proximity here:  plaintiff claims that the same day he asked Lowe for a grievance form, Lowe brought plaintiff up on a disciplinary charge.  (Am. Compl. at ECF 7).

However, the Court cannot conclude Lowe had any reasonable motivation to retaliate against plaintiff because there is no indication plaintiff expressed an intent to report anything that Lowe did (or failed to do).  In fact, nothing in the amended complaint suggests Lowe had knowledge of Williams's alleged threats against plaintiff before the attack or that Lowe played any role in Williams being returned to B-wing housing.  In other words, based on the facts alleged, a grievance about Williams's attack would not have implicated Lowe.  Thus, bearing in mind the Circuit's caution regarding inmate retaliation claims, the Court cannot reasonably infer that plaintiff's request for a grievance was "a substantial or motivating factor in [Lowe's] decision to discipline" him.  Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).

Accordingly, plaintiff has not stated a claim for First Amendment retaliation.

16

VI.     Section 1983 Claims Against the County

In addition to the individual defendants, plaintiff also named the County of Rockland in the caption of his amended complaint. However, any arguable Section 1983 cause of action against the County must be dismissed because plaintiff has not stated a claim pursuant to the requirements of Monell v. Department of Social Services, 436 U.S. 658 (1978) ("Monell").

Under Monell, a municipality is liable for a Section 1983 claim only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [plaintiff's] injury." Monell v. Dep't of Soc. Servs., 436 U.S. at 694. Thus, to assert a Section 1983 claim against a municipality, a plaintiff must show the existence of an official policy or custom that caused the injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right. Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. 2012).

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following: (i) "a formal policy officially endorsed by the municipality"; (ii) "actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question"; (iii) "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware"; or (iv) "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." Brandon v. City of New York, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010).

"While Monell claims are not subject to a 'heightened' pleading standard beyond that defined in Rule 8(a)(2), such claims nevertheless must meet the plausibility requirements of"

17

Bell Atlantic Corp. v. Twombly, 550 U.S. at 572, and Ashcroft v. Iqbal, 556 U.S. at 678. Guzman v. United States, 2013 WL 5018553, at *4 (S.D.N.Y. Sept. 13, 2013). "In other words, boilerplate allegations will not suffice." Id. "The allegations that [a defendant] acted pursuant to a 'policy,' without any facts suggesting the policy's existence, are plainly insufficient." Missel v. County of Monroe, 351 F. App'x 543, 545 (2d Cir. 2009) (summary order).

Plaintiff fails adequately to plead a policy or custom. Plaintiff's assertion that "[t]he County has failed to properly train the staff that works in RCJ from top to bottom" (Am. Compl. at ECF 11) is the type of conclusory, boilerplate allegation that does not meet the plausibility standard. Moreover, to the extent plaintiff asserts RCCC staff failed to follow proper procedures to prevent Williams from posing a security threat, he has not alleged the failure was so widespread or consistent as to constitute an informal policy or custom.

Accordingly, plaintiff cannot maintain a Section 1983 claim against the County of Rockland.

## CONCLUSION

Defendants' motion to dismiss is GRANTED in part and DENIED in part.

Plaintiff's failure-to-protect claim against defendants Oblenis, Van Dunk, and Karney may proceed.

All other claims are dismissed. The Clerk is instructed to terminate defendants Figueroa, Spence, Lowe, and the County of Rockland from the docket.

The Clerk is further instructed to terminate the motion. (Doc. #29).

Sergeant Oblenis, Officer Van Dunk, and Officer Karney shall file an answer to the amended complaint by March 5, 2024.

By separate Order, the Court will schedule an initial conference.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  Cf. Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Chambers will mail a copy of this Opinion and Order and all unpublished decisions cited herein to plaintiff at the address on the docket.

Dated: February 20, 2024
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge